## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

```
-----------------------------------------------------------------x
                                              :      Case No.
MANHATTAN VENTURE HOLDINGS LLC,               :
                                              :      COMPLAINT
                    Plaintiff,                :
                                              :
   -against-                                  :
                                              :
G SQUARED ASCEND I INC.                       :
G SQUARED V LP,                               :
G SQUARED EQUITY MANAGEMENT LP                :
                                              :
                    Defendants.               :
                                              :
-----------------------------------------------------------------x
```

Plaintiff Manhattan Venture Holdings LLC ("MVH," "Plaintiff," or "Manhattan Venture Partners"), by and through its attorneys, Carmel, Milazzo & Feil LLP, alleges for its Complaint against Defendants G Squared Ascend I Inc. ("G Squared Ascend"), G Squared V LP ("G Squared V") and G Squared Equity Management LP ("GS Management" (collectively, the "Defendants") as follows:

### NATURE OF THE ACTION

1.      This is an action arising from Defendants' willful infringement of Plaintiff's trademark. Plaintiff (together with its affiliates) is in the business of providing investment advisory and brokerage services to various funds. One of the signature lines of Plaintiff's business is the design and implementation of strategies to invest in late-stage venture-backed companies through stock purchased privately from existing shareholders. Such transactions are known as secondary purchases, to distinguish them from primary purchases, which entails the purchase of newly issued securities offered by a corporate issuer. Plaintiff is the owner of the federally registered trademark

"SECONDARY AS A SERVICE", which Plaintiff has used to advertise and promote Plaintiff's business and brand (the "MVP Brand").

2.      Incredibly, Defendants, whose underlying principals and affiliates are direct competitors of Plaintiff, in a blatant attempt to trade on the goodwill associated with Plaintiff's trademark and the MVP Brand, used the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A-SERVICE" describing Defendants' services relating to the design and implementation of secondary offerings strategies.

3.      Defendants went as far as mendaciously claiming the ownership of such infringing marks in the offering materials of G Squared Ascend's initial public offering and in marketing materials for G Squared V – a fund owned and operated by GS Management.

4.      Defendants have used the "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A-SERVICE" to advertise and solicit participation in G Squared Ascend's initial public offering and to solicit investments in G Squared V.  As alleged below, Defendants' use of the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A-SERVICE" infringed upon Plaintiff's trademark in violation of federal and state law.

5.      Based upon Defendant's unlawful conduct as alleged below, Plaintiff asserts claims for federal trademark infringement, unfair competition, and false endorsement and association under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), violation of the Illinois Uniform Deceptive Trade Practices Act; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; and unfair competition under Illinois common law, and is entitled to both monetary damages and injunctive relief to enjoin Defendants' continued infringement of Plaintiff's trademark.

## THE PARTIES

6.      Plaintiff Manhattan Venture Holdings LLC ("Plaintiff", "MVH" or "Manhattan Venture Partners") is a limited liability company organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 152 Madison Avenue, 7th Floor, New York, New York.

7.      Upon information and belief, Defendant G Squared Ascend I Inc. ("G Squared Ascend") is a corporation organized and existing pursuant to the laws of the Cayman Islands, with its principal place of business located at 205 N. Michigan Avenue, Suite 3770, Chicago, Illinois.

8.      Upon information and belief, Defendant G Squared V LP ("G Squared V") is a limited partnership organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 205 N. Michigan Avenue, Suite 3770, Chicago, Illinois.

9.      Upon information and belief, Defendant G Squared Equity Management LP ("GS Management") is a limited partnership organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 205 N. Michigan Avenue, Suite 3770, Chicago, Illinois.

## JURISDICTION AND VENUE

10.     This Court has subject matter over this action pursuant to 28 U.S.C. §§ 1331 and 1338 in that Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051, *et seq*.

11.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from the same nucleus of operative facts.

12.     This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located in the State of Illinois and in this judicial district, and continually and systematically do business in the State of Illinois.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants resides in this District.

## FACTS COMMON TO ALL CLAIMS

**Background**

14.  Plaintiff is a holding company that owns the intellectual property of, and controls, a group of operating entities doing business as Manhattan Venture Partners. Plaintiff provides investment advisory and brokerage services to various businesses including funds. One of the signature lines of Plaintiff's business is the design and implementation of investment strategies to invest in late-stage venture-backed companies through stock purchased privately from existing shareholders, *i.e.*, structuring and conducting the secondary market offerings. These securities purchased on the secondary market are then owned and held by the funds until there is an initial public offering of such stock, or an acquisition or other liquidation event, when such stock can be sold by the funds. Additionally, Manhattan Venture Partners' team structures programmatic liquidity solutions in collaboration with issuers of securities and otherwise assists issuers to avoid premature initial public offerings or acquisitions.

15.     Upon information and belief, Defendant engage in the same or substantially similar business as Manhattan Venture Partners, and is a direct competitor of Manhattan Partner Ventures.

**Plaintiff Registers the Trademark SECONDARY AS A SERVICE**

16.     Given the unique nature of the equity capital investment services and investment products provided by Manhattan Partner Ventures, Manhattan Venture Partners coined the phrase

"SECONDARY AS A SERVICE", to create a strong brand identity in the marketplace. Plaintiff began using the mark SECONDARY AS A SERVICE on its website and in advertisements of its services in July 2015.

17.     In April 2016, Plaintiff applied to the United States Patent and Trademark Office ("USPTO") to grant it exclusive ownership of the federally registered word mark SECONDARY AS A SERVICE for a variety of capital market investment and financial investment brokerage services performed by Manhattan Venture Partners. The application was granted by the USPTO, and Plaintiff's word mark SECONDARY AS A SERVICE was registered on April 11, 2017 (U.S. Trademark Registration No. 5,179,543). A copy of the certificate of registration is annexed hereto as Exhibit A.

18.     The federal registration granted Plaintiff with the exclusive right to use the phrase SECONDARY AS A SERVICE in connection with the following services:

> CLASS 36:Capital investment; Capital investment consulting; Capital investment services; Equity capital investment; Fund investment consultation; Funds investment; Providing venture capital, development capital, private equity, and investment funding; Venture capital advisory services; Venture capital financing; Venture capital fund management; Venture capital funding services to emerging and start-up companies; Venture capital services, namely, providing financing to emerging and start-up companies; Financial investment brokerage services, namely, secondary stock sale services and private stock sale services performed for others; Financial consulting in the field of company liquidity programs, namely, brokering private tender offer and private liquidity transactions for others.

19.     MVH and its subsidiaries and affiliates have been using the SECONDARY AS A SERVICE trademark (the "Trademark") in the United States for more than five years, regularly communicating it to its customers and prominently and consistently featuring it among its lines of services.

20.     As a result of Plaintiff's continuous use of the inherently distinctive SECONDARY AS A SERVICE trademark and the commercial success of its investment services under this mark, Plaintiff has achieved substantial goodwill in the Trademark. The financial industry, and more specifically the private equity investment community, has come to favorably know, recognize and identify such services bearing the Trademark as services of Plaintiff.

21.     The trademark has come to represent the valuable goodwill and reputation of Plaintiff as a provider of investment services. As a result, the financial industry, and more specifically the private investment community, has come to know that investment services marketed and/or provided under the Trademark are exclusively associated with Plaintiff.

22.     Further, Plaintiff owns a domain name [www.secondariesasaservice.com](www.secondariesasaservice.com) that redirects Manhattan Venture Partners' clients and prospective clients to its main website.

23.     During this time, the Trademark remained uncontested.

24.     The Trademark has become associated with Manhattan Venture Partners and the MVP Brand, and has become one of the most successful and renowned brands of Manhattan Venture Partners.

**Defendants' Infringement of the Trademark**

25.     Upon information and belief, GS Management provides investment advisory and services to various businesses including funds. GS Management owns and operates a number of funds, including G Squared Ascend and G Squared V, that invest in late-stage venture-backed companies through stock purchased privately from existing shareholders, *i.e.*, secondary market offerings.  GS Management is a direct competitor of Plaintiff.

26.     In or about early February 2021, Plaintiff learned that Defendants were infringing on the Trademark.

27. Specifically, Defendants G Squared Ascend and GS Management violated Plaintiff's rights in the Trademark in connection with the promotion of G Squared Ascend's business in an initial underwritten public offering of G Squared Ascend's securities. The registration statement and the preliminary prospectus associated with such offering were filed with the United States Securities and Exchange Commission (the "SEC") on January 28, 2021 (the "Registration Statement") and became effective on February 4, 2021. This offer of securities was underwritten by UBS. A copy of the registration statement on Form S-1 is annexed hereto as Exhibit B.

28. In its preliminary prospectus filed with the Registration Statement, G Squared Ascend used the phrases "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE" as marks in the description and designation of its advertised signature strategies and lines of businesses in connection with strategic management of portfolio funds by G Squared. For instance, the prospectus provides as follows:

> Secondary Direct Investments: The G Squared team works alongside portfolio company C-suites and board members to create ongoing liquidity programs as the company's Right of First Refusal (RoFR) partner. G Squared refers to this investment strategy as their proprietary SaaS; **Secondaries-as-a-Service,** G Squared has deployed this **Secondaries-as-a-Service** strategy into a majority of their positions across their funds. This unique strategy enables strong rapport with portfolio company management teams and fosters longstanding relationships that persist well into the typical portfolio company's public market debut. Our sponsor's **Secondaries-as-a Service** provides portfolio company management teams and boards with (i) the ongoing absorption of secondary transactions identified by management that relieves the pressure of today's elongated private company life cycle, (ii) cap table / valuation management advisory, (iii) the enablement of employee options and shareholder financing programs and (iv) the creation of liquidity for other managers invested who hold shares in a vehicle that have exhausted the related fund's life. This contributes to the greater than 70% of shares in current active funds sourced through secondary transactions. Historically, this activity has supported

portfolio companies to stay private longer. We view the G Squared Ascend strategy as an "Exit-as-a-Service" enhancement to our sponsor's core **Secondaries-as-a-Service** expertise. This strategy is being deployed as an increasing number of our portfolio companies appear ripe for public markets. G Squared views this overall **Secondaries-as-a-Service** approach as an important core competency of the organization that should serve to enhance our Company's likelihood of completing a successful merger. Additionally, our sponsor's experience in structuring transactions in the private market should translate to flexibility around reaching a successful deal…. (Emphases added)

Our distinctive **Secondaries as a Service** model builds long-lasting rapport with company management teams. Core fund positions are typically built over dozens of transactions, while assisting companies with the management of their cap tables. (Emphases added)

29.     To trade on the goodwill associated with the Trademark and the MVP Brand, Defendants G Squared Ascend and GS Management prominently used the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE", which merely changes the word "secondary" of the Trademark to its plural form, and is essentially identical to "SECONDARY AS A SERVICE" trademark.

30.     The marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE" were used in association with services connected with "provid[ing] growth capital to companies and also satisfy[ing] the liquidity needs of early-stage investors and employees seeking to monetize or partially monetize their shares in these highly regarded growth-stage businesses," *i.e.*, services identical to Plaintiff's services.

31.     Upon information and belief, UBS marketed G Squared Ascend's securities to UBS's customers and the public using the infringing mark through the Prospectus and other marketing materials in private and public offerings of G Squared Ascend's securities.

32.     Defendants G Squared Ascend and GS Management's use of the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE" in the Prospectus creates the false impression that the goods and services originate from G Squared Ascend and/or GS Management, not from Plaintiff, that the marks used are "proprietary" marks of G Squared Ascend and GS Management, or that the marks in question are somehow connected or associated with Plaintiff's services and financial products, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of the actual originator of goods and services.

33.     The attempted association of the Trademark with G Squared Ascend and GS Management's goods and services is likely to blur the distinctive character and tarnish the reputation of Plaintiff and the MVP Brand.

34.     On February 8, 2021, Plaintiffs notified G Squared Ascend and UBS that their use of the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE" infringed upon the Trademark, and demanded that they immediately cease and desist from using same. Despite the foregoing, G Squared has refused to cease and desist from using the mark "SECONDARIES-AS-A-SERVICE".

35.     Not only has G Squared Ascend and GS Management failed to cease and desist from the illegal use of Plaintiff's trademark, they apparently proceeded with the closing of G Squared Ascend public and private offerings using materials that prominently featured the Trademark, ignoring Plaintiff's cease and desist letter received by Defendants on February 8, 2021.

36.     On February 8, 2021, approximately at 5:17 pm, G Squared filed the Prospectus (which improperly included the infringing mark) under Rule 424(b)(4) with the SEC. Further, G Squared filed its Current Report on Form 8-K filed with the SEC on February 17, 2021, stating that

"[o]n February 9, 2021, G Squared Ascend I Inc. (the "Company") consummated an initial public offering… together with certain of the proceeds from the Private Placement, $345,000,000…"

37.     Based upon the foregoing, Defendant's infringement was willful and in bad faith.

38.     Additionally, it was recently learned that GS Management, in marketing G Squared V, used the Trademark in and after February 2021 to solicit investments in G Squared V – another fund owned and operated by GS Management.

39.     In an Investor Deck that is dated February 2021, GS Management and G Squared V use the mark "SECONDARIES AS A SERVICE" as a description of their services and strategies.

40.     Defendants G Squared V and GS Management's use of the mark ""SECONDARIES AS A SERVICE" in the Investor Deck creates the false impression that the goods and services originate from G Squared V and GS Management, not from Plaintiff, that the marks used are "proprietary" marks of G Squared V and GS Management, or that the marks in question are somehow connected or associated with Plaintiff's services and financial products, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of the actual originator of goods and services.

41.     The attempted association of the Trademark with G Squared V and GS Management's goods and services in the Investor Deck is likely to blur the distinctive character and tarnish the reputation of Plaintiff and the MVP Brand.

**Plaintiff Has Suffered Significant Harm**

42.     Defendants' unauthorized use of the Trademark has directly caused Plaintiff harm in the loss of exclusive rights to use and control the Trademark.

43.     Use of an identical or confusingly similar mark within the same investment community is likely to cause confusion.

44.     Defendants' unauthorized use has also caused Plaintiff harm in the form of confusion among consumers as to the origin and authenticity of Plaintiff's services and investment products and will cause additional irreparable harm in the form of usurpation of future business opportunities.

45.     Upon information and belief, Defendant's use of the Trademark has impaired the ability of business customers to identify accurately the source of Manhattan Venture Partners' business. Customers familiar with Plaintiff's services would likely assume incorrectly that the services provided by Defendant originated with Plaintiff, that Plaintiff is responsible for services provided by Defendant, that there is some type of affiliation, connection, or association among the parties, or that Plaintiff has sponsored, endorsed, or approved of Defendant's services.

46.     Defendant's use of the infringing marks through advertisements and solicitations made through public and private offerings improperly trade off the goodwill Plaintiff has established in the SECONDARY AS A SERVICE mark including the use of Plaintiff's goodwill to attract investors who are interested in secondary markets in private equity.

47.     Defendant, by its acts complained of herein, has infringed Plaintiff's trade name, trademark, and service mark rights in and to the Trademark; diluted the unique commercial impression of MVP Brand; unfairly competed with Plaintiff in the marketplace, and otherwise improperly used the reputation and goodwill of Plaintiff to promote their competing services which do not originate from, and which are not affiliated, connected or associated with, or sponsored, endorsed or approved by, Plaintiff.

48.     As a result of Defendant's conduct, Plaintiff has and will continue to suffer irreparable harm, for which Plaintiff has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
(Federal Trademark Infringement-15 U.S.C. § 1114)

49.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

50.     Plaintiff registration of the Trademark SECONDARY AS A SERVICE on the principal register of the USPTO constitutes *prima facie* evidence of the validity of the Trademark, and proof of Plaintiff's ownership and exclusive right to use the Trademark in connection with its services.

51.     The registration also provides G Squared with notice of Plaintiff's exclusive rights to the Trademark.

52.     The Trademark has acquired substantial goodwill which has now been damaged by Defendants' use of the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE".

53.     Defendants used the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE" in commerce by using the same in connection with the description of their services and strategies substantially similar to Plaintiff's financial advisory services and products in connection with the solicitations for the purchase of securities in G Squared Ascend's initial public offering and private offering, and in marketing investment opportunities in G Squared V.

54.     Defendants used the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE" with the knowledge that the same infringed upon the Trademark.

55.     Defendants' aforementioned conduct created the false and misleading impression that Defendants are sanctioned or authorized by Plaintiff to use the Trademark to advertise, promote, solicit, and sell its securities, services, and/or investment-related products.

56.     Defendants engaged in the aforementioned conduct with the intent to confuse and mislead the public into believing that Defendants, and the services and products they advertised are affiliated with Plaintiff, or that Defendants are the true source of the Trademark, when they are not.

57.     Defendants' use of the Trademark is, and at all times was, without the consent of Plaintiff.

58.     Defendants' use of the Trademark has resulted in Defendants unfairly realizing benefits from Plaintiff's advertisement and promotion of the Trademark, and unjustly exploiting and usurping Plaintiffs' exclusive right to the Trademark.

59.     By reason of the foregoing, Defendants are liable to Plaintiff for: (a) an amount representing three (3) times the amount of damages suffered by Plaintiff or Defendants' illicit profits; and (b) Plaintiff's reasonable attorneys' fees.

60.     Additionally, Plaintiff is entitled to a preliminary and permanent injunction restraining and enjoining Defendants from continuing to infringe upon the Trademark.

## SECOND CLAIM FOR RELIEF
(Federal Unfair Competition – 15 U.S.C. § 1125)

61.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

62.     Defendants'' actions and conduct as alleged above constitute use in commerce of a word, term, or device and false designation of origin that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Manhattan

Partner Ventures, or as to the origin, sponsorship or approval of Defendants' goods and services in violation of 15 U.S.C. 1125(a).

63.     By reason of the foregoing, Defendants liable to Plaintiff for: (a) an amount representing three (3) times the amount of damages suffered by Plaintiff or Defendants' illicit profits; and (b) Plaintiff's reasonable attorneys' fees.

64.     Additionally, Defendants have caused irreparable harm, damage, and injury to Plaintiff. Accordingly, Plaintiff is entitled to a preliminary and permanent injunction restraining and enjoining Defendants' from continuing to infringe upon the Trademark.

## THIRD CLAIM FOR RELIEF
(Violation of Illinois Uniform Deceptive Trade Practices Act)

65.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

66.     As alleged above, through Plaintiff's use and advertising of the Trademark, the Trademark has become associated with Manhattan Venture Partners.

67.     Plaintiff hereby alleges a deceptive trade practice violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §510/1, *et seq*.

68.     The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §510/1, *et seq.*, provides that a person engages in deceptive trade practices when, *inter alia*, he "passes off goods or services as those of another;...causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;... [or] represents that goods or services have sponsorship, approval, characteristics...that they do not have..." regardless of whether or not there is "competition between the parties or actual confusion or misunderstanding." 815 ILCS §510/2.

69.     Defendants' unauthorized use of the marks identical to the Trademark, or approximations or simulations thereof, trades on the business reputation and goodwill of Plaintiff with the intention of deceiving the public into believing that Defendants are affiliated, connected or associated with Plaintiff in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §510/1-7.

70.     Plaintiff has been and is being damaged by such violation and has no adequate remedy at law. Defendants' unlawful and willful conduct will continue to damage Plaintiff unless enjoined by this Court.

71.     Based on Defendants' previous and continuing knowledge of Plaintiffs federally-registered mark and receipt of Plaintiff's cease and desist letter, and continued activities, Defendant's violation of the Illinois Uniform Deceptive Trade Practices Act is willful.

## FOURTH CLAIM FOR RELIEF
(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)

72.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

73.     Plaintiff hereby alleges a deceptive trade practice violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1, *et seq.*

74.     Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1, *et seq.*, makes "the use or employment of any deception[,] fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact,... or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'...in the conduct of any trade or commerce" unlawful, regardless of whether "any person has in fact been misled, deceived or damaged thereby." 815 ILCS §505/2.

75.     Defendants' continuing unauthorized use of the marks identical to the Trademark, or approximations or simulations thereof, so as to mislead and deceive the public by suggesting an association, connection, or affiliation of Defendants with Plaintiff is an unfair method of competition and a deceptive act or practice in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1-12.

76.     Plaintiff has been damaged by such violation and has no adequate remedy at law. Defendants' unlawful conduct will continue to damage Plaintiff unless enjoined by this Court.

77.     Based on Defendants' previous and continuing knowledge of Plaintiffs federally-registered mark and receipt of Plaintiff's cease and desist letter, and continued activities, Defendants' violation of the Illinois Uniform Deceptive Trade Practices Act is willful.

**FIFTH CLAIM FOR RELIEF**
(Common Law Trademark Infringement)

78.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

79.     Defendants' conduct as alleged above constitutes an infringement of Plaintiff's common law trademark rights under Illinois law.

80.     As a result of the foregoing, Plaintiff has suffered irreparable damage and harm, and is entitled to a judgment for monetary damages in an amount to be determined at trial, together with preliminary and permanent injunctive relief, enjoining Defendants from using the Trademark (and the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE") in any manner.

## SIXTH CLAIM FOR RELIEF
(Common Law Unfair Competition)

81. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

82. As alleged above, Defendants' conduct and use of the phrases "SECONDARIES-AS-A-SERVICE" and SECONDARIES AS A SERVICE" in the Registration statement and prospectuses, in advertising and in the Investor Deck for G Squared V, Defendants services and products are likely to cause confusion with the Trademark as to the source thereof, and as to whether there is an affiliated with Plaintiff.

83. Defendants' unauthorized use and infringement of the Trademark has resulted in an unfair benefit to Defendants from Plaintiff's advertising and promotion of the Trademark, and from the goodwill associated therewith.

84. As a result of the foregoing, Plaintiff has suffered irreparable damages and injury. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining G Squared from using the Trademark (or the marks "SECONDARIES-AS-A-SERVICE" and "SECONDARIES AS A SERVICE") in any manner.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)     On the First Claim for Relief, in favor of Plaintiff, and against Defendants (i) in an amount representing three (3) times the amount of damages suffered by Plaintiff or Defendants' illicit profits; and (ii) Plaintiff's reasonable attorneys' fees; and (b) granting a preliminary and permanent injunction restraining and enjoining Defendants from continuing to infringe upon the Trademark and damaging Plaintiff's goodwill or otherwise competing unfairly with Plaintiff or any of their authorized licensees in any manner;

(b)       On the Second Claim for Relief, in favor of Plaintiff, and against Defendants (i) in an amount representing three (3) times the amount of damages suffered by Plaintiff or Defendants' illicit profits; and (ii) Plaintiff's reasonable attorneys' fees; and (b) granting preliminary and permanent injunction restraining and enjoining Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from continuing to infringe upon the Trademark and damaging Plaintiff's goodwill or otherwise competing unfairly with Plaintiff or any of their authorized licensees in any manner;

(c)       On the Third Claim for Relief, in favor of Plaintiff, and against Defendants, pursuant to 815 ILCS 510/2 (i) in an amount representing damages suffered by Plaintiff or Defendants' illicit profits; and (ii) Plaintiff's reasonable attorneys' fees; and (b) granting preliminary and permanent injunction restraining and enjoining Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from continuing to infringe upon the Trademark and damaging Plaintiff's goodwill or otherwise competing unfairly with Plaintiff or any of their authorized licensees in any manner;

(d)       On the Fourth Claim for Relief, in favor of Plaintiff, and against Defendants (i) in an amount representing the amount of damages suffered by Plaintiff or Defendants' illicit profits; and (ii) Plaintiff's reasonable attorneys' fees; and (b) granting preliminary and permanent injunction restraining and enjoining Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from continuing to infringe upon the Trademark and damaging Plaintiff's

goodwill or otherwise competing unfairly with Plaintiff or any of their authorized licensees in any manner;

(e)     On the Fifth Claim for Relief, in favor of Plaintiff, and against Defendants (i) in an amount representing three (3) times the amount of damages suffered by Plaintiff or Defendants' illicit profits; and (ii) Plaintiff's reasonable attorneys' fees; and (b) granting preliminary and permanent injunction restraining and enjoining Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from continuing to infringe upon the Trademark and damaging Plaintiff's goodwill or otherwise competing unfairly with Plaintiff or any of their authorized licensees in any manner;

(f)     On the Sixth Claim for Relief, in favor of Plaintiff, and against Defendants (i) in an amount representing three (3) times the amount of damages suffered by Plaintiff or Defendants' illicit profits; and (ii) Plaintiff's reasonable attorneys' fees; and (b) granting preliminary and permanent injunction restraining and enjoining Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from continuing to infringe upon the Trademark and damaging Plaintiff's goodwill or otherwise competing unfairly with Plaintiff or any of their authorized licensees in any manner;

(g)     Pursuant to 15 U.S.C. § 1116, directing Defendants to account to Plaintiff for the profits obtained through the unlawful activities alleged herein and unjust enrichment obtained through the unauthorized use of Plaintiff's Trademark;

(h)     Awarding Plaintiff punitive damages pursuant to Illinois common law on account of Defendant's gross, wanton, willful, and malicious conduct;

(i)     For its costs and disbursement, including its reasonable attorneys' fees;

(j)     For such other and further relief as the Court deems just, equitable, and proper.

Dated: Skokie, Illinois
       April 18, 2021

Respectfully submitted,

LAW OFFICE OF JOHN F. STIMSON LTD,


By: */s/ John F. Stimson*
        John F. Stimson, Esq.
9933 Lawlor Avenue, #312
Skokie, Illinois 60077
(847) 676-1000 (tel.)
(877) 877-0886 (fax)
john@stimson-law.com

CARMEL, MILAZZO & FEIL LLP
Christopher P. Milazzo
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 (tel.)
(646) 838-1314 (fax)
cmilazzo@cmfllp.com

*Attorneys for Plaintiff*